## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) LUBUTO MUSONDA,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **-vs-** | ) | **23-cv-00030-CVE-CDL** |
| | ) | |
| **(1) KAMERON HARVANEK,** | ) | |
| **Respondent** | ) | |

---

## PETITION FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN STATE CUSTODY PURSUANT TO 28 U.S.C. §2254
## AND BRIEF IN SUPPORT

---

Submitted by,

**DEBRA K. HAMPTON, OBA # 13621**
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
Tel:    (405) 250-0966
Fax:    (866) 251-4898
Email: hamptonlaw@cox.net
Attorney for Petitioner

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................................iii

CASES ...........................................................................................................................iii

STATUTES ..................................................................................................................... v

UNITED STATES CODE ................................................................................................ v

CONSTITUTIONAL PROVISIONS ................................................................................ v

I.      JURISDICTION ...................................................................................................... 1

II.     PRIOR PROCEEDINGS........................................................................................ 1

III.    FURTHER PROCEEDINGS ................................................................................. 2

IV.    TIMELINESS OF PETITION................................................................................ 3

V.     EXHAUSTION OF CLAIMS ................................................................................ 4

VI.    STANDARD OF REVIEW.................................................................................... 4

VII.   STATEMENT OF THE FACTS ............................................................................ 6

VIII.  GROUNDS:.......................................................................................................... 11

        I.      The OCCA refused to address Petitioner's claims that Appellate Counsel was ineffective for failing to raise plainly meritorious issues which resulted in the State's highest court making a determination that was objectively unreasonable in violation of 28 U.S.C. § 2254(d) (1-2).

IX.    CONCLUSION ..................................................................................................... 18

**TABLE OF AUTHORITIES**

**CASES**

*Alverson v. Workman*, 595 F.3d 1142, 1155 (10th Cir. 2010) ............................................. 6

*Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) .................................................. 12

*Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) ................................................................ 13

*Cox v. Page*, 1967 OK CR 152, ¶ 12, 431 P.2d 954, 956 ................................................. 13

*Darr v. Burford*, 339 U.S. 200, 203 (1950) ......................................................................... 4

*Davis v. Burke*, 179 U.S. 399, 401-403 (1900) ................................................................... 4

*Drope v. Missouri,* 420 U.S. 162, 172-172 (1975) ............................................................ 13

*Dusky v. U.S.*, 362 U.S. 402 (1960) ................................................................................... 14

*Early v. Packer*, 537 U.S. 3, 8 (2002) ................................................................................. 5

*Fisher v. Gibson*, 262 F.3d 1135, 1142-1143 (10th Cir. 2001),
  *cert. denied,* 535 U.S. 1034 (2002) ................................................................................ 4

*Gilbert v. State*, 1997 OK CR 71, ¶ 4, 951 P.2d 98, 103 ................................................. 14

*Hamilton v. Mullin*, 436 F.3d 1181, 1186 (10th Cir. 2006) ................................................. 5

*Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) ........................................................... 5

*Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) .......................................... 11

*Honig v. Doe,* 484 U.S. 305, 327 (1988) ............................................................................. 4

*Jackson v. Virginia*, 447 U.S. 307, 332 n.5 (1979) ............................................................. 5

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ........................................................... 11

*Lambert v. Blackwell*, 387 F.3d 210 (3rd Cir. 2004) ........................................................... 5

*M'Naghten's* Case, 8 Eng. Rep. 718 (1843) ...................................................................... 17

*Medina v. California,* 505 U.S. 437, 453 (1992) ................................................................ 13

*Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000) ................................................... 5

*Merzbacher v. Shearin*, 706 F.3d 356, 368 (4th Cir. 2013) ................................... 5

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ..................................................... 5

*Murray v. Carrier*, 477 U.S. 478, 494 (1986) ...................................................... 16

*Musonda v. State*, 2019 OK CR 1, 435 P.3d 694 ................................................... 2

*Nelson v. State*, 2001 OK CR 4, 21 P.3d 55 ........................................................ 12

*Pate v. Robinson,* 383 U.S. 375 (1966) ................................................................ 13

*Picard v. Connor*, 404 U.S. 270, 278 (1971) ........................................................ 4

*Pugh v. State*, 1989 OK CR 70, ¶ 5, 781 P.2d 843, 844 .............................. 15, 17

*Richardson v. State*, 1977 OK CR 298, 569 P.2d 1018, 1019 ........................... 17

*Riggins v. Nevada*, 504 U.S. 127, 139-140 (1992) ............................................. 13

*Schaffer v. Green*, 1970 OK CR 150, 496 P.2d 375 ............................................ 16

*State ex rel. Oklahoma Bar Association v. Elsey*, 2019 OK 81, 455 P.3d 903 ................ 12

*Stermer v. Warren*, 360 F. Supp. 3d 639, 653 (E.D. Mich. 2018) ...................... 5

*Stermer v. Warren*, 959 F.3d 704 (6th Cir. 2020) ................................................ 5

*Strickland v. Washington*, 466 U.S. 668 (1984) ..................................... 11, 12, 15

*U.S. v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995) ................................................ 11

*U.S. ex rel. Kemp v. Pate*, 359 F.2d 749, 751 (7th Cir. 1966) ............................ 4

*U.S. v. Dixon*, 901 F.3d 1170 (10th Cir. 2018) .................................................. 12

*U.S. v. Haddock*, 12 F.3d 950, 955 (10th Cir. 1993) ......................................... 11

*U.S. v. Keys*, No. 21-CR-332-RAW (E.D. Okla. Nov. 1, 2022) ....................... 12

*U.S.  v. Loman*, No. 14-6029 (10th Cir. 2015) ................................................... 12

*U.S.  v. Weed*, 389 F.3d 1060 (10th Cir. 2004) .................................................. 12

*Walker v. State*, 1986 OK CR 116, 723 P.2d 273, 282,
   *cert. denied*, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 .......................... 17

*Walker v. State,* 1992 OK CR  10, ¶ 9, 826 P.2d 1002, 1005 ........................................... 13

*Williams v. Taylor*, 529 U.S. 362, 412 (2000)....................................................................... 4

*York v. Galetka,* 314 F.3d 522, 525 (10th Cir. 2003) ............................................................ 4

## STATUTES

21 O.S. § 152 ...................................................................................................................... 17
21 O.S. § 152 (4) ................................................................................................................. 17
21 O.S.1998 § 152 .............................................................................................................. 15
21 O.S.2021 § 152(4) .......................................................................................................... 14

## UNITED STATES CODE

28 U.S.C. § 2244 (d)(1)(A)..................................................................................................... 3
28 U.S.C. § 2254 ........................................................................................................... passim

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. VI................................................................................................. 2, 3, 11
U.S. Const. amend. XIV .................................................................................................. 2, 15

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1) LUBUTO MUSONDA,** | ) |
| **Petitioner,** | ) |
| | ) |
| **-vs-** | ) |
| | ) |
| **(1) KAMERON HARVANEK,** | ) |
| **Respondent** | ) |

### PETITION FOR WRIT OF HABEAS CORPUS AND BRIEF IN SUPPORT
### BY A PERSON IN STATE CUSTODY PURSUANT TO 28 U.S.C. §2254

COMES NOW, the Petitioner, **LUBUTO MUSONDA**, # 747155, through his attorney

Debra K. Hampton, in custody of the Oklahoma Department of Corrections, incarcerated at the

Lexington Correctional Center, Lexington, Oklahoma. In support thereof, Petitioner states:

## I.   JURISDICTION

The action does not involve diversity jurisdiction.

## II.   PRIOR PROCEEDINGS

### A.   ORIGINAL CONVICTION

| | |
|---|---|
| **Court:** | Tulsa County |
| **Case Number:** | CF-2015-770 |
| **Date of sentence:** | October 24, 2016 |
| **Presiding Judge:** | Kelly Greenough |

**Offenses and terms of sentence:**

| | |
|---|---|
| Count 3: Child Abuse by Injury | |
| Count 4: Lesser charge of second-degree robbery | (10) years |
| Count 5: Assault and Battery on a police officer | (7) year |
| Count 6: Misdemeanor Assault and Battery | (1) year |
| Count 7: Cruelty to Animals | (90) days in jail |
| | (90) days in jail |

**Trial:** Petitioner was found guilty after a jury trial. The jury acquitted Petitioner on Counts 1 and 2 - First Degree Burglary and Attempted Kidnapping, respectively. As to Count 4, Petitioner was originally charged with Robbery by Force or Fear, but the jury rejected the original charge and convicted him of the lesser included offense of Second-Degree Robbery.

**Counsel:** Larry Edwards, OBA # 13838.

1

## B.   DIRECT APPEAL

| | |
|---|---|
| **Court:** | Oklahoma Court of Criminal Appeals (OCCA) |
| **Case No:** | F-2016-988 |
| **Closed:** | January 10, 2019, AFFIRMED |
| **Opinion:** | *Musonda v. State*, 2019 OK CR 1, 435 P.3d 694 |
| **Counsel:** | Neal B. Kirkpatrick, OIDS |

## PROPOSITIONS ON APPEAL:

I.    THE TRIAL COURT ERRED BY NOT REQUIRING THE PROSECUTION TO DIVULGE TO THE DEFENDANT THE FINDINGS OF A PRIVATE EXPERT WITNESS, RETAINED BY THE STATE TO REBUT APPELLANT'S PLEA OF NOT GUILTY BY REASON OF INSANITY.

II.    AT THE VERY LEAST, THE TRIAL COURT SHOULD HAVE REQUIRED THE STATE TO FURNISH WHATEVER FINDINGS OR OTHER DETERMINATIONS THE STATE'S EXPERT MADE TO THE COURT FOR AN IN-CAMERA DETERMINATION AS TO WHETHER THOSE FINDINGS COULD BE CONSTRUED AS EXCULPATORY TO THE DEFENDANT.

## III.   FURTHER PROCEEDINGS

### C.   STATE POST-CONVICTION

| | |
|---|---|
| **Court:** | Tulsa County |
| **Case Number:** | CF-2015-770 |
| **Date filed:** | January 13, 2021 |
| **Order:** | May 17, 2021 |
| **Counsel:** | Debra K. Hampton |

Petitioner raised this proposition supporting his Application:

I.    PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE PLAINLY MERITORIOUS ISSUES IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT.

II.    APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO CHALLENGE THE DISTRICT COURT'S SUBJECT MATTER JURISDICTION BECAUSE OKLAHOMA CONSTITUTION ARTICLE I § 3 PROVIDED EXCLUSIVE JURISDICTION TO THE UNITED STATES.

2

D.      **STATE POST-CONVICTION APPEAL**

**Court:**              OCCA
**Case No:**            PC-2021-681
**Closed:**             November 30, 2021
**Opinion:**            AFFIRMED
**Counsel:**            Debra K. Hampton

The Petitioner raised this Proposition of Error:

I.      THE DISTRICT COURT ABUSED ITS DISCRETION DENYING PETITIONER'S APPLICATION FOR POST-CONVICTION RELIEF BECAUSE PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE PLAINLY MERITORIOUS ISSUES IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS.

II.     THE DISTRICT COURT ABUSED ITS DISCRETION DENYING PETITIONER'S APPLICATION FOR POST-CONVICTION RELIEF BECAUSE PETITIONER'S CLAIM INVOLVE FUNDAMENTAL ERROR BECAUSE THE DISTRICT COURT LACKED SUBJECT-MATTER JURISDICTION OVER "INDIAN LANDS," WHERE EXCLUSIVE JURISDICTION WAS CEDED TO THE UNITED STATES UNDER OKLA. CONST., ART. I, § 3, THUS PETITIONER'S CONVICTIONS ARE VOID AB INITIO, AS THIS CASE RAISES AN ISSUE OF FIRST IMPRESSION.

## IV.   TIMELINESS OF PETITION

This Petition is timely under the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2244 (d)(1) (A-B) establishes:

(1)     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

   (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

*See York v. Galetka,* 314 F.3d 522, 525 (10th Cir. 2003), *citing Fisher v. Gibson*, 262 F.3d 1135, 1142-1143 (10th Cir. 2001), *cert. denied,* 535 U.S. 1034 (2002). Petitioner argues that because of the Petitioner's mental condition and the treatment that he has endured with being placed in therapeutic seclusion that it was a State created impediment to him bringing the instant Petition.

## V.      EXHAUSTION OF CLAIMS

The Petitioner's claims in this Petition are exhausted as the State Court has had the first opportunity to hear the claims sought to be vindicated in this Federal Habeas proceeding. The Federal Court has required a State prisoner to present the State Courts with the same claim he urges upon the Federal Courts. See *Darr v. Burford*, 339 U.S. 200, 203 (1950); *Davis v. Burke*, 179 U.S. 399, 401-403 (1900). Sometimes, "the ultimate question for disposition," *U.S. ex rel. Kemp v. Pate*, 359 F.2d 749, 751 (7th Cir. 1966), "will be the same despite variations in the legal theory or factual allegations urged in its support." *Picard v. Connor*, 404 U.S. 270, 278 (1971). However, when a State Court lacked subject-matter jurisdiction the Court would not be a Court of competent jurisdiction and thus exhaustion of State remedies would be futile. *Honig v. Doe,* 484 U.S. 305, 327 (1988).

## VI.     STANDARD OF REVIEW

Federal habeas relief may not be granted for claims subject to 28 U.S.C. § 2254(d) unless it is shown that the State Court's decision "was contrary to" federal law then clearly established by the Supreme Court, or it "involved an unreasonable application of" such law, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or it "was based on an unreasonable determination of the facts" in light of the record before the State Court, § 2254(d)(2). Petitioner argues that analyzing the OCCA's decision demonstrates that the decision is **"contrary to"** clearly established precedents as the State Court "applies a rule that contradicts the governing law set forth in our

cases and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, *supra*, at 405-406; (quoting *Early v. Packer*, 537 U.S. 3, 8, (2002)). The Court held that avoiding these "pitfalls **does not** require citation of our cases — indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the State-Court decision contradicts them." *Id.* "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) (citing *Jackson v. Virginia*, 447 U.S. 307, 332 n.5 (1979)).

Even under the AEDPA's deferential standard a Federal Court can disagree with a State Court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Hamilton v. Mullin*, 436 F.3d 1181, 1186 (10th Cir. 2006). "If a State Court's finding rests on thin air, the petition will have little difficulty satisfying the standards for relief under § 2254." *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000); *Lambert v. Blackwell*, 387 F.3d 210 (3rd Cir. 2004); *Merzbacher v. Shearin*, 706 F.3d 356, 368 (4th Cir. 2013) (We do not disagree with this suggestion.) The Supreme Court has instructed, "[e]ven in the context of Federal habeas, deference does not imply abandonment or abdication of judicial review," *Miller-El v. Cockrell*, 537 U.S. at 340; *Stermer v. Warren*, 360 F. Supp. 3d 639, 653 (E.D. Mich. 2018), *aff'd Stermer v. Warren*, 959 F.3d 704 (6th Cir. 2020).

The OCCA's determination under a timely AEDPA analysis involves an unreasonable determination of Supreme Court precedents because the State Court's determination rests partly on thin air. This Court should conclude the Writ should issue. The Tenth Circuit has held that under 28 U.S.C. § 2254, review is "limited to examining whether the highest State Court's

5

resolution of a particular claim is contrary to, or an unreasonable application of, clearly established federal law." *Alverson v. Workman*, 595 F.3d 1142, 1155 (10th Cir. 2010) (emphasis added). "Supreme Court precedent directs us, in deciding how to resolve a federal claim raised by a state habeas petitioner, to focus on the last state court decision disposing of that federal claim." *Alverson* at 1152 (emphasis added).

## VII.   STATEMENT OF THE FACTS

The Petitioner has never denied that he had committed the offenses for which he was found guilty. The OCCA noted that Petitioner never disputed that he committed the acts complained of in the Information. The evidence in this case creates a reasonable certainty that Petitioner could not differentiate between right and wrong. But equally overwhelming is evidence that Petitioner's behavior was so atypical for him because he had no previous criminal record and no history of mental illness that had been treated until just days before the alleged incident. Dr. Curtis T. Grundy, who examined Petitioner (Tr. III. 698-862) testified that on New Year's Eve of 2014, Petitioner witnessed a shooting at a hookah lounge. He developed fears that persons were out to harm him, including a belief he had been poisoned. (Tr. III. 712-13)

In mid-January 2015, Petitioner met "some friends" at a bar and smoked marijuana with them. Then Petitioner exhibited paranoia and disorganized behavior. He believed that he was being pursued and harassed by persons in a white truck. Petitioner was afraid those persons would kill him. On the morning of February 7, 2015, Petitioner told his sister he was being pursued by people in a white truck. (Tr. III. 713-14). Months later, while being treated at Family and Children's Services in Tulsa, Petitioner stated there must have been PCP in what he smoked. (Tr. III. 714).

On February 7, 2015, in the early morning hours, Petitioner woke up feeling strange. He drove over to his sister's house to talk to her about his condition and to clear his head (Tr. III. 725).

En route, Petitioner became more agitated and paranoid. Too frightened to drive, Petitioner stopped his vehicle on the side of highway 169, one of the busiest roads in Tulsa, and called 911 for an ambulance. *Id*. The ambulance arrived, and EMS personnel found Petitioner walking down the side of the highway. They transported Petitioner to St. Francis Hospital in Tulsa, where he was seen in the emergency room. Petitioner told EMS personnel he had eaten an Egg McMuffin and someone had "laced" the Egg McMuffin with poison or given him drugs.

At St. Francis, Petitioner was administered a drug screen for amphetamines, methamphetamine, barbiturates, benzodiazepine, cannabinoids, cocaine and opioids. He tested negative for all. Drugs such as K-2 were not included in the drug screen. (Tr. III. 720-721). Petitioner denied ever intentionally taking anything other than alcohol or marijuana. *Id.*

Petitioner stayed at St. Francis for several hours, at which time he was judged stable enough to go home. He called his mother, Monica, and told her he did not know where he was. Before they left, the nurses told Monica to be careful, because the way Petitioner was talking, made little sense. (Tr. II. 36-37).

After Petitioner left the hospital, Petitioner went to his sister, Theresa's home. Petitioner was at his sister's home when she arrived and asked him what was going on, he said "I'm not sure, but feel like I'm losing my mind." (Tr. III. 627-629). Petitioner told his sister he thought his work as a customer service representative for Dish Network-was driving him crazy. He then told Theresa he had called 9-1-1 and gone to the hospital. He said that they had told him he was fine, but he did not think he was fine; that his friends had drugged him and poisoned him in his food. He was very, very agitated. He described how he met his friends playing pool and how they picked him up in a white truck. Meanwhile, Monica had taken the children outside because Petitioner was screaming and crying. (Tr. III. 630-633). Petitioner grabbed Theresa by the hand and dragged her toward the

car, saying "We need to go, I need to save you, your husband is going to kill you." (Theresa's husband was in Zambia, taking care of family matters).

Petitioner went back into the house, saying "We're out of time, we have to go, they're going to kill me." He then held out his phone and showed her a picture of a man identified as a co-worker. Petitioner said that man was one person who had poisoned him. Petitioner kept saying there were four individuals in the picture. There was only a single person in the photo. (Tr. III. 643-48).

Petitioner said: "They're not going to kill me, they're not going to kill me, that's one of them right there." He was pointing at Theresa's friend Ngosa, whom he had known for at least a year. Ngosa was outside of the house, standing next to her car talking on the phone and laughing. (Tr. III. 643-44).

Monica was yelling "That's Ngosa, that's not one of them. Then Petitioner and Monica ran through the garage. Theresa heard screaming, went outside, and saw Petitioner punching Ngosa. Petitioner was saying "You're not going to kill me. You tried to do it last night but you're not going to do it today." (Tr. III. 650-53).

Upon parking her minivan in the driveway of her Tulsa home and exiting, Courtney Stout was met by her ten-year-old son, M.H., advising her that a man down the street was punching a woman (Tr. II 438). Seeing a commotion a few houses away, Ms. Stout ordered her son and two daughters to stay in the house and lock the doors (Tr. II 440). Ms. Stout dialed 911 on her cellphone while standing in the drive and observing the defendant screaming obscenities and trying to kick out the window of a neighbor's car (Tr. II 443-45). When the defendant made eye contact and saw Ms. Stout on the phone, he ran to her and demanded she give up her car keys (Tr. II 446-47). When she said no, the defendant punched Ms. Stout in the face, causing her to scream and drop her phone

(Tr. II 448). These actions are heard on the 911 recording (S.E. 1). Ms. Stout ran to her front door, with the defendant in pursuit (Tr. II 449).

The two struggled with the storm door, with Ms. Stout finally getting the wood door open, squeezing inside and locking it behind her (Tr. II. 451). The apparent safety was shattered, however, when the defendant kicked in the door and once again punched her in the face (Tr. II. 452). As the attack continued, Ms. Stout was slammed to the floor and became dizzy (Tr. II. 454). The Petitioner exited the back door and ran toward the ten-year-old boy, who had phone in hand and was climbing the back fence (Tr. II. 455, 513). The Petitioner pulled M.H. off the fence and punched and screamed obscenities at him (Tr. II. 456). When the family dog came to the boy's rescue, the Petitioner kicked the dog in the head until it retreated (Tr. II. 458, 515).

Ms. Stout fought the Petitioner in the backyard, and he temporarily exited, allowing her to take her son back in the house (Tr. II. 459-62, 517). When the Petitioner returned, Ms. Stout finally capitulated and said she would give him the car keys and go with him, if he would quit assaulting her family (Tr. II. 463-68). Exiting the house, Ms. Stout saw the police arriving and told the Petitioner he better leave, causing him to run to the van and speed out of the driveway, only to crash the van into a neighbor's house (Tr. III. 468, 554, 599; S.E. 13-19).

Having received multiple calls for help, Tulsa Police Officer, Stephen Villarreal, pulled onto Ms. Stout's Street, causing her minivan being driven by the Petitioner to swerve and crash into a nearby house (Tr. III. 599). Officer Villarreal ordered the Petitioner out of the vehicle at gunpoint, but he did not comply (Tr. III. 601). When the officer broke out a side window to extricate the Petitioner, he exited out the opposite side window, falling on the ground (Tr. III. 603). The Petitioner tried to tackle Officer Villarreal and the two wrestled before the Petitioner was subdued (Tr. III. 604).

Both Officer Villarreal and Officer Thomas McLain testified that the Petitioner's demeanor was agitated and violent - and that they had seen similar behavior in persons who had admitted to smoking K2 (Tr. III. 584, 593). Officer Villarreal noted that the Petitioner exhibited excessive sweating, rapid heartbeat and delusions - behavior similarly to the dozen persons the officer had encountered while they were under the influence of K2 (Tr. III. 593, 607). In the half-page written statement made to the police, the Petitioner's mother, Monica Musonda, she noted three times that her son was high on drugs (Tr. II. 408). Ms. Musondo similarly stated to her son's treatment facility several months after the crimes (Tr. II. 397, 408). Additionally, Ms. Musondo testified that on the day of the incident, her son was red faced and rubbing his eyes excessively, along with heavy sweating and a rapid heartbeat - conditions she had never seen before (Tr. II. 348). The Petitioner admitted he had smoked K2 (Tr. IV. 832).

Though the jury verdicts indicate a rejection of the insanity defense, the jury also appears to have embraced the voluntary intoxication defense (O.R. 170-76), as they acquitted the Petitioner of the three crimes which required specific intent: Burglary in the First Degree, Attempted Kidnapping, and Robbery by Force (Counts 1, 2 and 4). The jury was specifically instructed these three crimes required proof of specific intent, and that voluntary intoxication would indicate an inability to form such intent (O.R. 160-67). The jury found the Petitioner guilty of the lesser included second-degree robbery (Count 4), and the remaining counts, which were all crimes of general intent.

## VIII.  GROUNDS:

I.   **THE OCCA REFUSED TO ADDRESS PETITIONER'S CLAIMS THAT APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE PLAINLY MERITORIOUS ISSUES WHICH RESULTED IN THE STATE'S HIGHEST COURT MAKING A DETERMINATION THAT WAS OBJECTIVELY UNREASONABLE IN VIOLATION OF 28 U.S.C. § 2254(D) (1-2).**

On collateral review, Petitioner raised two claims for relief in both the State District Court and the State's highest court. The State District Court's analysis finding that Appellate Counsel was not ineffective was objectively unreasonable and considering the OCCA did not address Petitioner's ineffective assistance of Appellate Counsel claims this Court's review must be *de novo*.

The State District Court recognized the standard in *Strickland v. Washington*, 466 U.S. 668 (1984) as controlling to his claim. The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend VI. To establish a deprivation of this right, a Petitioner must demonstrate: (1) counsel's performance was deficient and (2) such performance prejudiced the defense. *Strickland,* at 687. "Under this test, the petitioner must show both that his counsel committed serious errors in light of 'prevailing professional norms' and that there is a 'reasonable probability' that the outcome would have been different had those errors not occurred." *U.S. v. Haddock*, 12 F.3d 950, 955 (10th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 694). *Strickland* applies to Appellate Counsel. *See U.S. v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). When a habeas petitioner alleges Appellate Counsel failed to raise an issue on appeal, the Court "first examine[s] the merits of the omitted issue." *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). "If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance." *Id.* (quotations omitted). If the issue has merit,

11

the Court must then determine whether counsel's failure to raise it "was deficient and prejudicial" under *Strickland. Id.*

Standing alone, the *Strickland* standard is "highly deferential." *Strickland*, at 689. Coupled with § 2254(d)(1), this Court's review of the OCCA's ruling would be "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (A "doubly deferential judicial review ... applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard."). However, when the State's highest court refuses to address a claim double deference does not apply. "[W]hen assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [this Court] defer[s] to the **state court's determination** that counsel's performance was not deficient and, further, ... to the attorney's decision in how to best represent a client." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011).

> **a)**    **The OCCA refused to address Petitioner's claim that Appellate Counsel was ineffective for failing to raise Trial Counsel's ineffectiveness for failing to move for the Determination of Competency**

Petitioner argued in both State Courts that Appellate Counsel was ineffective for failing to raise Trial Counsel's ineffectiveness for failing to move for the Determination of Competency. While Petitioner's Trial Counsel filed "Notice of Insanity Defense" ("NGRI") on October 26, 2015, as there was strong evidence that Petitioner was insane at the time of the alleged offense.

The Petitioner presented expert testimony from psychologist, Curtis Grundy Ph.D.,[1] who gave extensive trial testimony (Tr. IV 701-866). The State presented no expert testimony to rebut

---

[1] Dr. Grundy has testified as an expert in many cases *See U.S. v. Dixon*, 901 F.3d 1170 (10th Cir. 2018); *State ex rel. Oklahoma Bar Association v. Elsey*, 2019 OK 81, 455 P.3d 903; *Nelson v. State*, 2001 OK CR 4, 21 P.3d 55; *U.S. v. Loman*, No. 14-6029 (10th Cir. 2015); *U.S.* v. *Keys*, No. 21-CR-332-RAW (E.D. Okla. Nov. 1, 2022); *U.S. v. Weed*, 389 F.3d 1060 (10th Cir. 2004).

the testimony of Dr. Gundy, his opinion was exculpatory to the charged offense because Petitioner was suffering a state of insanity and whether he was temporarily or partially deprived of reason and would reasonably question a person's present ability to make rational decisions. Petitioner argued in State Court there should have been a determination regarding competency to resolve any doubt and assure the Trial Court that Petitioner could understand consequences of waiving important rights such as either accepting or rejecting a plea. *See Pate v. Robinson,* 383 U.S. 375 (1966)

Petitioner argues that anytime there is a NGRI raised there is questions regarding mental health. The District Court should have *sua sponte* ordered a competency examination of Petitioner because Petitioner's mental faculties were questionable. Petitioner argues the State District Court determined that Defendants are presumed competent, and it is their burden to show otherwise. *Walker v. State,* 1992 OK CR 10, ¶ 9, 826 P.2d 1002, 1005. Petitioner argues that when there is doubt raised regarding sanity, a defendant should not be presumed to be competent, merely because they are a Defendant, when there are genuine issues regarding sanity.

Petitioner states there is a difference between competency and insanity as recognized by the State District Court and both standards are different but closely related as it involves one's mental health status. In a criminal prosecution, the State may rely upon a presumption that the defendant is sane. *Cox v. Page,* 1967 OK CR 152, ¶ 12, 431 P.2d 954, 956. However, when a question of sanity is raised there must be a determination as to their present ability which should not be left to counsel to make that determination because a Court cannot assume that counsel was unbiased. "[T]he criminal trial of an incompetent defendant violates due process." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Medina v. California,* 505 U.S. 437, 453 (1992); *Drope v. Missouri,* 420 U.S. 162, 172-172 (1975); *Pate* at 378. Nor is the significance of this right open to

13

dispute. As Justice Kennedy emphasized:

> Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so. *Drope v. Missouri,* 420 U.S. 162, 171-172 (1975). *Riggins v. Nevada*, 504 U.S. 127, 139-140 (1992) (opinion concurring in judgment). *Cooper*, 517 U.S. at 354.

A Petitioner may not be put to trial unless he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding … [and] a rational as well as factual understanding of the proceedings against him." *Dusky v. U.S.*, 362 U.S. 402 (1960) (per curiam). Petitioner argues that the record removes no questions as to Petitioner's competence at the time of these proceedings. The District Court's determination finds that the Court would have found Petitioner competent to stand trial regardless of the genuine issue because determining whether a sufficient doubt has been raised regarding a defendant's competency is left to the trial judge. *Gilbert v. State*, 1997 OK CR 71, ¶ 4, 951 P.2d 98, 103. The District Court's determination shifts an unreasonable burden to a defendant "contradictory to argue that a defendant who may be incompetent should be presumed to possess sufficient intelligence he can adduce evidence of his incompetency which might otherwise be within his grasp." *Medina v. California, supra*, at., 450. Here, the State District Court's resolution of his claim involved an objectively unreasonable determination

      **b)**      **The OCCA did not address Petitioner's claim that Appellate Counsel was ineffective for failing to raise Trial Counsel's ineffectiveness for failing to file a Motion to Dismiss for lack of jurisdiction because Petitioner was exempt from prosecution because of a mental defect rendering him not criminally responsible for his actions.**

The State District Court's analysis determined:

> Petitioner next contends that his appellate counsel was ineffective for not raising the issue of trial counsel's ineffectiveness regarding trial counsel's failure to file a motion to dismiss for lack of jurisdiction because his mental illness or defect rendered him not criminally responsible. However, this Court concludes that Petitioner has failed to demonstrate prejudice, as the outcome of his direct appeal would not have been different had his appellate counsel raised this issue.

Further, the District Court also concluded Petitioner confuses and conflates affirmative defenses with jurisdiction. An affirmative defense such as a statutory bar to prosecution as provided for in 21 O.S.2021 § 152(4) which states:

> All persons are capable of committing crimes, except those belonging to the following classes: Mentally ill persons, and all persons of unsound mind, including persons temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness.

*See also Pugh v. State*, 1989 OK CR 70, ¶ 5, 781 P.2d 843, 844. Further, the District Court determined that "[i]n essence, Petitioner argues that when he alleged insanity as a defense, it acted as a jurisdictional barrier for a court to hear his criminal case. However, this is incorrect." [District Court Order at 9] The District Court's adjudication of 21 O.S.2021 § 152 (4) was an abuse of discretion and an objectively unreasonable determination under *Strickland*, because Petitioner was prejudiced by Counsel's performance.

Petitioner argues that the District Court's determination that Appellate Counsel's failure to raise Trial Counsel's failure to file a Motion to Dismiss based upon 21 O.S. § 152 (4) would not have changed the outcome of Petitioner's direct appeal is unreasonable. While 21 O.S. § 152 (4) is concerning state law counsel can still be ineffective for failing to file a motion to dismiss. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland,* at 689.

15

Petitioner argues 21 O.S.1998 § 152 provides a person is exempt from prosecution and can be raised in a motion to dismiss. Petitioner argues that to hold part of the statute under § 152 to a different standard is violative of the equal protection clause of the Fourteenth Amendment of the United States Constitution. 21 O.S. § 152 (2) provides that "[a]ll persons are capable of committing crimes, except those belonging to the following classes: "[c]hildren over the age of seven (7) years, but under the age of fourteen (14) years, in the absence of proof that at the time of committing the act or neglect charged against them, they knew its wrongfulness;"

In *Schaffer v. Green*, 1970 OK CR 150, 496 P.2d 375, the OCCA determined that a Petitioner who was 17 years of age could be tried as an adult without certification under 21 O.S. § 152, holding:

> The members of this Court share the shock and distaste which all responsible legislators, parents and citizens will feel by the recognition that the provisions of 21 O.S. § 152 are still effective, and we are confident that the legislative leaders will, without delay, enact effective and humane constitutionally effective legislation to correct the harshness of this law. It is not within the constitutional authority of this Court to exercise legislative authority when constitutional legislation exists. The invasion of legislative functions by courts not only violates the doctrine of separation of powers but has brought the courts of the nation into great conflict and disrepute and this author views such action as not only a violation of the constitution, but the oath of judicial office.

*Schaffer v. Green*, 496 P.2d at 378.

Petitioner argues 21 O.S. § 152 establishes "[a]ll persons are capable of committing crimes, except those belonging to the following classes." Petitioner believes there must be a pretrial test to determine whether a person is capable of committing a crime, probable cause must be determined, to believe whether a Defendant was a person within the statutory definition under 21 O.S. § 152 (4). Petitioner argues that not moving to dismiss results in fundamental error and a denial of fundamental fairness especially, if a Defendant, would be entitled to a directed verdict. The Petitioner presented expert testimony from psychologist, Curtis Grundy, who gave extensive

16

trial testimony (Tr. IV 701-866). The State presented no expert testimony to rebut the testimony of Dr. Gundy, his opinion was exculpatory to the charged offense because Petitioner was suffering a state of insanity and whether he was temporarily or partially deprived of reason.

A "constitutional claim that implicates 'fundamental fairness'…. Compels review regardless of procedural defaults." *Murray v. Carrier*, 477 U.S. 478, 494 (1986). Petitioner was suffering from a state of insanity when he committed the alleged offenses rendering him not criminally responsible for his actions. Oklahoma follows the *M'Naghten*[2] test of legal insanity. See 21 O.S. § 152 et seq; *Garrett v. State*, 1978 OK CR 126, 586 P.2d 754. The terms of 21 O.S. § 152 (4) provides: "All persons can commit crimes, except those belonging to these classes………(4) (Lunatics, *insane persons*, and ***all persons of unsound mind***, including persons *temporarily* or ***partially deprived of reason***, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness."

It is clearly established that "a defendant was legally insane if during the commission of the crime he was suffering from a mental *disease or defect* rendering him unable to differentiate between right and wrong." *Pugh, supra*. Petitioner was suffering from a mental defect and Appellate Counsel's failure to raise Trial Counsel's ineffectiveness resulted in undue prejudice where the fundamental principles of due process were violated. Under the *M'Naghten* test, a defendant is insane if suffering from a mental disease or defect "rendering him... ***unable to understand*** the ***nature and consequences*** of his acts." *Pugh*, *supra*, at 844; See also *Richardson v. State*, 1977 OK CR 298, 569 P.2d 1018, 1019. This language followed explicitly the rule in *M'Naghten* which is the only test used to determine criminal responsibility in Oklahoma. *Walker v. State*, 1986 OK CR 116, 723 P.2d 273, 282, *cert. denied*, 479 U.S. 995, 107 S.Ct. 599, 93

---

[2] *M'Naghten's* Case, 8 Eng. Rep. 718 (1843)

L.Ed.2d 600 (1986); *Jones v. State*, *supra*. The Petitioner was not criminally responsible for his actions as he could not understand the nature and consequences or whether his actions were right or wrong. Thus, Petitioner was not capable of forming the requisite intent to commit a crime. This Court should Grant an unconditional writ.

## IX.    CONCLUSION

WHEREFORE, the Petitioner respectfully prays this Court will issue an Order Granting the Writ or set this case for an Evidentiary Hearing. Petitioner argues that his claims are meritorious and warrant relief from the judgment and sentence.

Respectfully submitted,

/s/ DEBRA K. HAMPTON
DEBRA K. HAMPTON, OBA # 13621
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
(405) 250-0966
(866) 251-4898 (fax)
hamptonlaw@cox.net
Attorney for Petitioner

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Office of the Attorney General
fhc.docket@oag.state.ok.us

I hereby certify that on January 24, 2023, I mailed a copy of the same to Petitioner who is not registered participants of the ECF System.

/s/ DEBRA K. HAMPTON
DEBRA K. HAMPTON