

* 1 0 4 8 6 4 8 5 8 7 *

# IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

---

## CASE NO. CF-2015-770

---

DISTRICT COURT
**FILED**

JAN 2 8 2021

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

**LUBUTO MUSONDA,**
**Petitioner,**

**-vs-**

**THE STATE OF OKLAHOMA,**
**Respondent.**

---

**AMENDED**
**Petitioner's Brief in Support of Post-Conviction Relief**
**And Request for Evidentiary Hearing**

---

**DEBRA K. HAMPTON, OBA # 13621**
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
Tel:(405) 250-0966
Fax:(866) 251-4898
email: hamptonlaw@cox.net
Attorney for Defendant/Petitioner

EXHIBIT 9

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iv

CASES ......................................................................................................................... iv

UNITED STATES CODE ........................................................................................... viii

STATUTES ................................................................................................................. viii

OTHER AUTHORITIES .............................................................................................. ix

CONSTITUTIONAL PROVISIONS ........................................................................... ix

JURISDICTION ............................................................................................................. 1

STATEMENT OF THE CASE ....................................................................................... 1

STATEMENT OF THE FACTS ..................................................................................... 3

PROPOSITION I ............................................................................................................ 7

> THE PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE PLAINLY MERITORIOUS ISSUES IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT.

STANDARD OF REVIEW .............................................................................................. 7

ARGUMENT AND AUTHORITY ................................................................................. 7

PLAIN ERROR ANALYSIS ........................................................................................... 8

a.  Appellate Counsel was ineffective for failing to raise Trial Counsel's
    ineffectiveness for failing to file a Motion for the Determination of
    Competency. .......................................................................................................... 9

b.  Appellate Counsel was ineffective for failing to raise Trial Counsel's
    ineffectiveness for failing to file a Motion to Dismiss for lack of jurisdiction
    because Petitioner was exempt from prosecution because of a mental defect
    rendering him not criminally responsible for his actions ...................................... 12

c.  Petitioner has a Sixth Amendment right to the effective assistance of
    Appellate Counsel and Trial Counsel where that right extends to plea
    negotiations. ......................................................................................................... 13

PROPOSITION II ..................................................................................................................... 14

       APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE
       TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO CHALLENGE
       THE DISTRICT COURT'S SUBJECT MATTER JURISDICTION BECAUSE
       OKLAHOMA CONSTITUTION ARTICLE 1 § 3 PROVIDED EXCLUSIVE
       JURISDICTION TO THE UNITED STATES.

STANDARD OF REVIEW ....................................................................................................... 14

ARGUMENT AND AUTHORITY ........................................................................................... 14

REQUEST FOR AN EVIDENTIARY HEARING ..................................................................... 19

CONCLUSION ........................................................................................................................ 19

CERTIFICATE OF SERVICE ................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)................................................ 17

*Board of Commissioners v. U.S.*,
   308 U.S. 343, 351, 60 S.Ct. 285, 288, 84 L.Ed. 313 (1939).................................................. 19

*Boykin v. Alabama*,
   395 U.S. 238, 243-244, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).................................... 14

*Bryson v. State*,
   1995 OK CR 57, 903 P.2d 333, 334 ........................................................................................ 1

*Burck v. Taylor*,
   152 U.S. 634, 649 14 S.Ct. 696, 38 L.Ed. 578 (1894)........................................................... 18

*Burger v. Kemp*,
   483 U.S. 776, 803-04, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)............................................ 12

*Canadian St. Regis Band of Mohawk Indians v. New York*,
   278 F. Supp. 2d 313, 330-33 (N.D.N.Y. 2003)...................................................................... 19

*Coddington v. State*,
   2011 OK CR 21, ¶ 3, 259 P.3d 833 ........................................................................................ 8

*Connolly v. Union Sewer Pipe Co.*,
   184 U.S. 540, 548, 22 S.Ct. 431, 46 L.Ed. 679 (1902).......................................................... 18

*Collins v. Harker Heights*,
   503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)................................................. 9

*Collins v. Yosemite Park & Curry Co.*,
   304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938)............................................................. 15

*Cooper v. Oklahoma*,
   517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996)................................................ 10

*Couch v. State*,
   1991 OK CR 67, ¶ 4, 814 P.2d 1045, 1046 .......................................................................... 14

*County of Sacramento v. Lewis*,
   523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)........................................................ 9

iv

*Custom Radio Corp. v. Passenger Transportation Specialists, Inc.,*
    2010 OK CIV APP 93, ¶ 11, 241 P.3d 658 ............................................................. 3

*Davidson v. Cannon,*
    474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)...................................... 9

*DeShaney v. Winnebago County Dept. of Social Servs.,*
    489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).................................... 9

*Drope v. Missouri,*
    420 U.S. 162, 172-172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)......................... 10, 11

*Dusky v. United States,*
    362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) ................................................ 11

*Ewert v. Bluejacket,*
    259 U.S. 129, 138, 42 S.Ct. 442, 66 L.Ed. 858 (1922) .......................................... 18

*Foley Bros., Inc. v. Filardo,*
    336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949).......................................... 14

*Galliher v. Cadwell,*
    145 U.S. 368, 372 12 S.Ct. 873, 36 L.Ed. 738 (1892)............................................ 18

*Glasser v. United States,*
    315 U.S. 60, 69, 62 S.Ct. 457, 86 L.Ed. 680 (1942) ................................................ 9

*Gonzalez v. Thaler,*
    565 U.S. 134, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012)....................................18

*Halstead v. Grinnan,*
    152 U.S. 412, 417, 14 S.Ct. 641, 38 L.Ed. 495 (1894).......................................... 19

*Harrington v. Richter,*
    562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011)...................................... 8

*Hawkins v. Hannigan,*
    185 F.3d 1146, 152 (10th Cir. 1999) ...................................................................... 9

*Hill v. Lockhart,*
    474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)........................................ 13

*Hoover v. Kiowa Tribe of Oklahoma,*
    1998 OK 23, 957 P.2d 81........................................................................................ 17

*Image Software, Inc. v. Reynolds & Reynolds Co.,*
    459 F.3d 1044, 1048 (10th Cir. 2006) ...................................................................17

*Iowa v. Tovar,*
    541 U.S. 77, 81, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) ...................................................... 11

*Jones v. Barnes,*
    463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ............................................................ 8

*Jones v. State,*
    1985 OK CR 99, ¶ 4, 704 P.2d 1138, 1140 ...................................................... 1, 13

*Kontrick v. Ryan,*
    540 U. S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) ...................................................... 18

*Lafler v. Cooper,*
    566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) .................................................... 12, 13

*Logan v. State,*
    2013 OK CR 2, 293 P.3d 969 ...................................................................................... 1, 8

*Louisville & Nashville R. Co. v. Mottley,*
    211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) ............................................................ 17

*McGirt v. Oklahoma,*
    591 U.S. ____, 140 S.Ct. 2452, 207 L.Ed.2d 985 (2020) ................................................. passim

*M'Naghten's Case,*
    8 Eng. Rep. 718 (1843) ........................................................................................... 12

*McMann v. Richardson,*
    397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ................................................. 13, 14

*Medina v. California,*
    505 U.S. 437, 453, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) ............................................ 10, 11

*Miller v. Ammon,*
    145 U.S. 421, 426, 12 S.Ct. 884, 36 L.Ed. 759 (1892) ............................................................ 17

*Missouri v. Frye,*
    566 U.S. 134, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012) .................................................... 12, 13

*Murray v. Carrier,*
    477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) ................................................... 12

*Murphy v. Royal,*
    875 F. 3d 896, 907–909, 966 (2017), *cert. granted* 589 U. S. ___ (2019) ............................ 14

*Northern Pac. Ry. Co. v. Boyd,*
    228 U.S. 482, 500, 33 S.Ct. 554, 57 L.Ed. 931 (1913) ............................................................ 18

*Padilla v. Kentucky,*
  559 U.S. 356, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010)................................................ 13

*Pate v. Robinson,*
  383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)........................................................ 10, 11

*Patterson v. New York,*
  432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)..................................................... 11

*Pugh v. State,*
  1989 OK CR 70, 781 P.2d 843, 844 ............................................................................. 12, 13

*Richardson v. State,*
  1977 OK CR 298, 569 P.2d 1018, 1019 ............................................................................. 13

*Riggins v. Nevada,*
  504 U.S. 127, 139-140, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992).......................................... 10

*Schaghticoke Tribe of Indians v. Kent Sch. Corp.,*
  423 F. Supp. 780, 784-85 (D. Conn. 1976) ......................................................................... 19

*Simpson v. State,*
  1994 OK CR 40, ¶ 3, 876 P.2d 690, 704 ............................................................................ 8, 9

*Smith v. Robbins,*
  528 U.S. 259, 289, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000)............................................. 8

*Stevens v. State,*
  2018 OK CR 11, 422 P.3d 741 ......................................................................................... 1

*Strickland v. Washington,*
  466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)................................................. 8, 13, 14

*Surplus Trading Co. v. Cook,*
  281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091 (1930).............................................................. 15

*Swim v. Bergland,*
  696 F.2d 712, 718 (9th Cir. 1983) .................................................................................... 18

*Union Pacific R. Co. v. Locomotive Engineers,*
  558 U.S. 67, 81, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009)..................................................... 17

*U.S. v. 7,405.3 Acres of Land,*
  97 F.2d 417, 423 (4th Cir. 1938) ..................................................................................... 18

*U.S. v. Ahtanum Irrigation District,*
  236 F.2d 321, 334 (9th Cir.1956), *cert. denied,*
  352 U.S. 988, 77 S.Ct. 386, 1 L.Ed.2d 367 (1957)............................................................. 18

vii

*United States v. Apperson,*
   441 F.3d 1162, 1212 (10th Cir. 2006) ................................................................. 10

*United States v. Atkinson,*
   297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936) ...................................................... 9

*United States v. Cook,*
   45 F.3d 388 (10th Cir. 1995) ........................................................................... 9

*U.S. v. Cotton,*
   535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) ................................... 17

*United States v. Olano,*
   507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) .................. 8, 9

*U.S. v. Southern Pacific Transportation Co.,*
   543 F.2d 676, 699 (9th Cir.1976) .................................................................. 19

*Walker v. State,*
   1986 OK CR 116, 723 P.2d 273, 282, *cert. denied,*
   479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986) ..................................... 13

*Waskey v. Hammer,*
   223 U.S. 85, 94, 56 L.Ed. 359, 32 S.Ct. 187 (1912) ...................................... 18

*Webb v. State,*
   1983 OK CR 40, ¶ 3, 661 P.2d 904, 905 .......................................................... 1

## UNITED STATES CODE

18 U.S.C. § 1151 ...........................................................................................

## STATUTES

12 O.S. § 2015(A) .......................................................................................... 3
12 O.S. § 2104 (D) ........................................................................................ 10
20 O.S. § 3001.1 ....................................................................................... 8, 10
21 O.S. § 152 (4) ..................................................................................... 13, 14
21 O.S. § 649 ................................................................................................ 2
21 O.S. § 741 ................................................................................................ 2
21 O.S. § 791 ................................................................................................ 2
21 O.S. § 843.5 ............................................................................................. 2
21 O.S. § 1431 .............................................................................................. 2
22 O.S. § 1080 .............................................................................................. 1
22 O.S. § 1084 ............................................................................................. 15
22 O.S. § 1085 ............................................................................................. 15
22 O.S. § 1086 .............................................................................................. 1

**OTHER AUTHORITIES**

4 W. Blackstone, Commentaries at 24 ........................................................................................ 11

N. Morris, Madness and the Criminal Law 37 (1982) ................................................................ 12

**CONSTITUTIONAL PROVISIONS**

Okla. Const., art. 1, § 3 ............................................................................................................. 15

U.S. Const. amend. VI ........................................................................................................... 8, 14

U.S. Const. amend. XIV ........................................................................................................ 8, 11

## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| **LUBUTO MUSONDA,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CF-2015-770** |
| | ) | |
| **THE STATE OF OKLAHOMA,** | ) | |
| **Respondent.** | ) | |

## PETITIONER'S AMENDED BRIEF IN SUPPORT AND
## REQUEST FOR AN EVIDENTIARY HEARING

COMES NOW, the Petitioner, **LUBUTO MUSONDA**, through his attorney, Debra K. Hampton, and submits his Brief in Support of his Application for Post-Conviction Relief.

### JURISDICTION

The district court reacquires jurisdiction of a case through post-conviction proceedings. "Excluding a timely appeal, the Uniform Post-Conviction Procedure Act (22 O.S. § 1080 et seq.) encompasses and replaces all common law and statutory methods of challenging a conviction or sentence." See *Jones v. State*, 1985 OK CR 99, ¶ 4, 704 P.2d 1138, 1140; *Webb v. State*, 1983 OK CR 40, ¶ 3, 661 P.2d 904, 905. "Post-Conviction review provides petitioners with very limited grounds upon which to base a collateral attack on their judgments." *Logan v. State*, 2013 OK CR 2, ¶ 3, 293 P.3d 969, 973, citing 22 O.S. 2001, § 1086. An exception to this rule exists where a Court finds sufficient reason for not asserting or inadequately presenting an issue in prior proceedings or when an "intervening change in constitutional law impacts the judgment and sentence." *Bryson v. State*, 1995 OK CR 57, 903 P.2d 333, 334; *Stevens v. State*, 2018 OK CR 11, 422 P.3d 741.

### STATEMENT OF THE CASE

Petitioner was tried by jury in the District Court of Tulsa County, Case Number CF-2015-770, on these charges: Count 1, First Degree Burglary, in violation of 21 O.S. 2011, § 1431, Count

2, Attempted Kidnapping, in violation of 21 O.S. 2011, § 741, Count 3, Child Abuse by Injury, in

violation of 21 O.S. 2011, § 843.5, Count 4, Robbery by Force or Fear, in violation of 21 0.S.2011,

§ 791, Count 5, Assault and Battery on a Police Officer, in violation of 21 O.S. 2011, § 649, Count

6, Misdemeanor Assault and Battery, in violation of 21 O.S. 2011, § 644, and Count 7, Cruelty to

Animals, in violation of 21 O.S. 2011, § 1685 (O.R. 72-74)

The jury returned not guilty verdicts on Counts 1 and 2, and guilty verdicts on all remaining

counts — recommending sentences of ten (10) years imprisonment and a $5000 fine for Count 3,

seven (7) years imprisonment and a $7000 fine for Count 4 (on the lesser charge of second-degree

robbery), one (1) years imprisonment and a $500 fine for Count 5, ninety (90) days in jail and a

$1000 fine for Count 6, and ninety (90) days in jail and a $500 fine for Count 7 (Tr. V. 988-90;

O.R. 182-88). The Trial Court sentenced the defendant under the jury's recommendations,

ordering the sentences to run consecutively (S.Tr. 13).

The Petitioner timely appealed to the Oklahoma Court of Criminal Appeal (OCCA), in

Case No. F-2016-988, that was affirmed on January 25, 2019. Petitioner raised two propositions.

I.      THE TRIAL COURT ERRED BY NOT REQUIRING THE
        PROSECUTION TO DIVULGE TO THE DEFENDANT THE FINDINGS
        OF A PRIVATE EXPERT WITNESS, RETAINED BY THE STATE TO
        REBUT APPELLANT'S PLEA OF NOT GUILTY BY REASON OF
        INSANITY.

II.     AT THE VERY LEAST, THE TRIAL COURT SHOULD HAVE
        REQUIRED THE STATE TO FURNISH WHATEVER FINDINGS OR
        OTHER DETERMINATIONS THE STATE'S EXPERT MADE TO THE
        COURT FOR AN IN-CAMERA DETERMINATION AS TO WHETHER
        THOSE FINDINGS COULD BE CONSTRUED AS EXCULPATORY TO
        THE DEFENDANT.

On January 13, 2020, Petitioner, applied for Post-Conviction Relief in the District Court.

To date, there has been no responsive pleading filed and no action taken to dispose of the

Application. Thus, pleadings may be amended before a responsive pleading is filed. See 12 O.S.

2011 § 2015(A) which authorizes amendments by the party before a responsive pleading is served,

2

and with Court approval afterwards. *Custom Radio Corp. v. Passenger Transportation Specialists, Inc.*, 2010 OK CIV APP 93, ¶ 11 241 P.3d 658.

### STATEMENT OF THE FACTS

The Petitioner did not or on appeal, deny that he had committed the offenses for which he was found guilty. The OCCA noted that Petitioner never disputed that he committed the acts complained of in the Information. The evidence would create a reasonable certainty that Petitioner could not differentiate between right and wrong.

But equally overwhelming is evidence that Petitioner's behavior was so atypical for him because he had no previous criminal record and no history of mental illness that had been treated until just days before the alleged incident. Dr. Curtis T. Grundy, who examined Petitioner (Tr. III. 698-862). Dr. Gundy testified that on New Year's Eve of 2014, Petitioner witnessed a shooting at a hookah lounge. He developed fears that persons were out to harm him, including a belief he had been poisoned. (Tr. III. 712-13).

In mid-January 2015, Petitioner met "some friends" at a bar and smoked marijuana with them. Then Petitioner exhibited paranoia and disorganized behavior. He believed that he was being pursued and harassed by persons in a white truck. Petitioner was afraid those persons would kill him. On the morning of February 7, 2015, Petitioner told his sister he was being pursued by people in a white truck. (Tr. III. 713-14). Months later, while being treated at Family and Children's Services in Tulsa, Petitioner stated there must have been PCP in what he smoked. (Tr. III. 714).

On February 7, 2015, in the early morning hours Petitioner woke up feeling strange. He drove over to his sister's house to talk to her about his condition and to clear his head (Tr. III. 725). En route, Musonda became more agitated and paranoid. Too frightened to drive, Petitioner stopped his vehicle on the side of highway 169, one of the busiest roads in Tulsa, and called 911 for an ambulance. *Id*. The ambulance arrived, and EMS personnel found Petitioner walking down the

3

side of the highway. They transported Petitioner to St. Francis Hospital in Tulsa, where he was seen in the emergency room. Petitioner told EMS personnel he had eaten an Egg McMuffin and that someone had "laced" the Egg McMuffin with poison or given him drugs.

At St. Francis, Petitioner was administered a drug screen for amphetamines, methamphetamine, barbiturates, benzodiazepine, cannabinoids, cocaine and opioids. He tested negative for all. Drugs such as K-2 were not included in the drug screen. (Tr. III. 720-721). Petitioner denied ever intentionally taking anything other than alcohol or marijuana. *Id.*

Petitioner stayed at St. Francis for several hours, at which time he was judged stable enough to go home. He called his mother, Monica, and told her he did not know where he was. Before they left, the nurses told Monica to be careful, because the way Petitioner was talking, made little sense. (Tr. II. 36-37).

After Petitioner left the hospital, Petitioner went to his sister, Theresa's home. Petitioner was at his sister's home when she arrived asked him what was going on, he said "I'm not sure, but feel like I'm losing my mind." (Tr. III. 627-629). Petitioner told his sister he thought his work as a customer service representative for Dish Network-was driving him crazy. He then told Theresa he had called 9-1-1 and gone to the hospital. He said that they had told him he was fine, but he did not think he was fine; that his friends had drugged him and poisoned him in his food. He was very, very agitated. He described how he met his friends playing pool and how they picked him up in a white truck. Meanwhile, Monica had taken the children outside because Petitioner was screaming and crying. (Tr. III. 630-633). Petitioner grabbed Theresa by the hand and dragged her toward the car, saying "We need to go, I need to save you, your husband is going to kill you." (Theresa's husband was in Zambia, taking care of family matters).

Petitioner went back into the house, saying "We're out of time, we have to go, they're going to kill me." He then held out his phone and showed her a picture of a man identified as a co-

4

worker. Petitioner said that man was one person who had poisoned him. Petitioner kept saying there were four individuals in the picture. There was only a single person in the photo. (Tr. III. 643-48).

Petitioner said: "They're not going to kill me, they're not going to kill me, that's one of them right there." He was pointing at Theresa's friend Ngosa, whom he had known for at least a year. Ngosa was outside of the house, standing next to her car talking on the phone and laughing. (Tr. III. 643-44).

Monica was yelling "That's Ngosa, that's not one of them. Then Petitioner and Monica ran through the garage. Theresa heard screaming, went outside, and saw Petitioner punching Ngosa. Petitioner was saying "You're not going to kill me. You tried to do it last night but you're not going to do it today." (Tr. III. 650-53).

Upon parking her minivan in the driveway of her Tulsa home and exiting, Courtney Stout was met by her ten-year-old son, M.H., advising her that a man down the street was punching a woman (Tr. II 438). Seeing a commotion just a few houses away, Ms. Stout ordered her son and two daughters to stay in the house and lock the doors (Tr. II 440). Ms. Stout dialed 911 on her cellphone while standing in the drive and observing the defendant screaming obscenities and trying to kick out the window of a neighbor's car (Tr. II 443-45). When the defendant made eye contact and saw Ms. Stout on the phone, he ran to her and demanded she give up her car keys (Tr. II 446-47). When she said no, the defendant punched Ms. Stout in the face, causing her to scream and drop her phone (Tr. II 448). These actions are heard on the 911 recording (S.E. 1). Ms. Stout ran to her front door, with the defendant in pursuit (Tr. II 449).

The two struggled with the storm door, with Ms. Stout finally getting the wood door open, squeezing inside and locking it behind her (Tr. II. 451). The apparent safety was shattered, however, when the defendant kicked in the door and once again punched her in the face (Tr. II.

452). As the attack continued, Ms. Stout was slammed to the floor and became dizzy (Tr. II. 454). The Petitioner exited the back door and ran toward the ten-year-old boy, who had phone in hand and was climbing the back fence (Tr. II. 455, 513). The Petitioner pulled M.H. off the fence and punched and screamed obscenities at him (Tr. II. 456). When the family dog came to the boy's rescue, the Petitioner kicked the dog in the head until it retreated (Tr. II. 458, 515).

Ms. Stout fought the Petitioner in the backyard, and he temporarily exited, allowing her to take her son back in the house (Tr. II. 459-62, 517). When the Petitioner returned, Ms. Stout finally capitulated and said she would give him the car keys and go with him, if he would quit assaulting her family (Tr. II. 463-68). Exiting the house, Ms. Stout saw the police arriving and told the Petitioner he better leave, causing him to run to the van and speed out of the driveway, only to crash the van into a neighbor's house (Tr. III. 468, 554, 599; S.E. 13-19).

Having received multiple calls for help, Tulsa police officer, Stephen Villarreal, pulled onto Ms. Stout's street, causing her minivan being driven by the Petitioner to swerve and crash into a nearby house (Tr. III. 599). Officer Villarreal ordered the Petitioner out of the vehicle at gunpoint, but he did not comply (Tr. III. 601). When the officer broke out a side window to extricate the Petitioner, he exited out the opposite side window, falling on the ground (Tr. III. 603). The Petitioner tried to tackle Officer Villarreal and the two wrestled before the Petitioner was subdued (Tr. III. 604).

Both Officer Villarreal and Officer Thomas McLain testified that the Petitioner's demeanor was agitated and violent - and that they had seen similar behavior in persons who had admitted to smoking K2 (Tr. III. 584, 593). Officer Villarreal noted that the Petitioner exhibited excessive sweating, rapid heartbeat and delusions - behavior similarly to the dozen persons the officer had encountered while they were under the influence of K2 (Tr. III. 593, 607). In the half-page written statement, the Petitioner's mother, Monica Musonda, made to the police, she noted three times that

6

her son was high on drugs (Tr. II. 408). Ms. Musondo similarly stated to her son's treatment facility

several months after the crimes (Tr. II. 397, 408). Additionally, Ms. Musondo testified that on the

day of the incident, her son was red faced and rubbing his eyes excessively, along with heavy

sweating and a rapid heartbeat - conditions she had never seen before (Tr. II. 348). The Petitioner

admitted he had smoked K2 (Tr. IV. 832).

Though the jury verdicts indicate a rejection of the insanity defense, the jury also appears

to have embraced the voluntary intoxication defense (O.R. 170-76), as they acquitted the Petitioner

of the three crimes which required specific intent: Burglary in the First Degree, Attempted

Kidnapping, and Robbery by Force (Counts 1, 2 and 4). The jury was specifically instructed these

three crimes required proof of specific intent, and that voluntary intoxication would indicate an

inability to form such intent (O.R. 160-67). The jury found the Petitioner guilty of the lesser

included second-degree robbery (Count 4), and the remaining counts, which were all crimes of

general intent.

## PROPOSITION I

**THE PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE PLAINLY MERITORIOUS ISSUES IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS.**

### STANDARD OF REVIEW

The Petitioner states that the correct standard of review is *Logan v. State*, 2013 OK CR 2, 293 P.3d 969; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Smith v. Robbins*, 528 U.S. 259, 289, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000); *Coddington v. State*, 2011 OK CR 21, ¶ 3, 259 P.3d 833; *Simpson v. State*, 1994 OK CR 40, ¶ 3, 876 P.2d 690; *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993); 20 O.S. § 3001.1

### ARGUMENT AND AUTHORITY

The Petitioner raises the claim of ineffective assistance of Appellate Counsel for failing to

raise "plainly meritorious" claims as the OCCA has addressed this issue and reviewing standard

in *Logan, supra.* Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a Petitioner must show both (1) deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceedings would have been different. *Strickland, supra,* at 687-89. And we recognize that "[a] Court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quoting *Strickland* at 689). The OCCA emphasizes that it will often be unnecessary to address both the performance prong and the prejudice prong in this context. Since the prejudice analysis is often more straight-forward, it makes sense to address this issue first. See *Strickland,* at 697.

In *Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), the Court recognized the viability of claims of ineffective assistance of Appellate Counsel alleging that even though an appellate attorney appealed certain issues, the attorney "failed to raise a particular claim" that the Petitioner maintains should have been appealed. *Id.* at 287-88. The *Robbins* Court held – "it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim." *Id.* at 288, (citing *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). "Plainly meritorious" claims and "dead-bang winners" are what the Tenth Circuit Court of Appeals has sometimes described as appellate claims that directly establish both inadequate performance and prejudice. *Hawkins v. Hannigan*, 185 F.3d 1146, 152 (10th Cir. 1999); *United States v. Cook*, 45 F.3d 388 (10th Cir. 1995)

### PLAIN ERROR ANALYSIS

The error is plain error as it "seriously affects the fairness, integrity or public reputation of judicial proceedings," *United States v. Atkinson*, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936);

*United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The guarantees in the Bill of Rights are the protecting bulwarks against the reach of arbitrary power. *Glasser v. United States,* 315 U.S. 60, 69, 62 S.Ct. 457, 86 L.Ed. 680 (1942). *Collins v. Harker Heights,* 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (noting that the Due Process Clause was intended to prevent government officials "from abusing [their] power, or employing it as an instrument of oppression") (quoting *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), See also *Davidson v. Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)), *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

Petitioner argues this is plain error affecting his substantial rights, Title 12 O.S. § 2104 (D) provides "[N]othing in this section precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the Court." Petitioner must prove: 1) the existence of an actual error; 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. See *Simpson v. State,* 1994 OK CR 40, ¶ 3, 876 P.2d 690, 704; 20 O.S. § 3001.1. If these elements are met, this Court will correct plain error only if the error "seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings" or otherwise represents a "miscarriage of justice." *Simpson* at ¶ 30; 20 O.S. § 3001.1. "If all these conditions are met, a Court reviewing the error may exercise discretion to correct that error. See *United States v. Apperson*, 441 F.3d 1162, 1212 (10th Cir. 2006).

### a. Appellate Counsel was ineffective for failing to raise Trial Counsel's ineffectiveness for failing to file a Motion for the Determination of Competency.

Petitioner was suffering from a mental disease at the time of the offenses and he continues to suffer from delusions. Appellate Counsel did not raise Trial Counsel's ineffectiveness for failing

to seek a formal determination regarding the competency of Petitioner, even though, Petitioner's counsel filed "Notice of Insanity Defense" on October 26, 2015. A determination on competency should have occurred to resolve any doubt and assure the Trial Court that the Petitioner could understand consequences of waiving important rights such as either accepting or rejecting a plea. See *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). This Court should have sua sponte ordered a competency examination of Petitioner when sanity was raised because Petitioner's mental faculties were questionable. "[T]he criminal trial of an incompetent defendant violates due process." *Cooper v. Oklahoma,* 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); *Medina v. California,* 505 U.S. 437, 453, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992); *Drope v. Missouri,* 420 U.S. 162, 172-172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate* at 378. Nor is the significance of this right open to dispute. As Justice Kennedy emphasized:

> Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so. *Drope v. Missouri,* 420 U.S. 162, 171-172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). *Riggins v. Nevada,* 504 U.S. 127, 139-140, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (opinion concurring in judgment). *Cooper,* 517 U.S. at 354.

A Petitioner may not be put to trial unless he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... [and] a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). In *Medina, supra,* this case established that a state may presume that the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence. *Medina* at 449.

Here, Petitioner's Fourteenth Amendment due process rights were violated because there was no inquiry and the presumption that Petitioner was competent "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."

*Id.* at 445 (quoting *Patterson v. New York*, 432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)). Blackstone acknowledged that a defendant "who became 'mad' after the commission of an offense should not be arraigned for it because he is not able to plead to it with that advice and caution that he ought, and if he became 'mad' after pleading, he should not be tried, for how can he make his defense?" *Drope, supra*, at 171 (quoting 4 W. Blackstone, Commentaries at 24).

In a competency hearing, the "emphasis is on [the Petitioner's] capacity to consult with counsel and to comprehend the proceedings, and ... this is by no means the same test as those which determine criminal responsibility at the time of the crime." *Pate, supra*, at 388-389. Also finding it contradictory to argue that a defendant who may be incompetent should be presumed to possess sufficient intelligence he can adduce evidence of his incompetency which might otherwise be within his grasp." *Pate,* at 384.

Incompetent persons "are not really present at trial; they may not be able properly to play the role of an accused person, to recall relevant events, to produce evidence and witnesses, to testify effectively on their own behalf, to help confront hostile witnesses, and to project to the trier of facts a sense of their innocence." N. Morris, Madness and the Criminal Law 37 (1982). The plea-bargaining process is a critical stage of a criminal prosecution. See *Iowa v. Tovar*, 541 U.S. 77, 81, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (entry of the guilty plea is a critical stage of the criminal process); *Burger v. Kemp*, 483 U.S. 776, 803-04, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (pretrial plea negotiations are a critical stage of the criminal process). See *Lafler v. Cooper,* 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); *Missouri v. Frye*, 566 U.S. 134, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).

> **b.**   **Appellate Counsel was ineffective for failing to raise Trial Counsel's ineffectiveness for failing to file a Motion to Dismiss for lack of jurisdiction because Petitioner was exempt from prosecution because of a mental defect rendering him not criminally responsible for his actions.**

The Petitioner presented expert testimony from psychologist, Curtis Grundy, who gave extensive trial testimony (Tr. IV 701-866). The State presented no expert testimony to rebut the testimony of Dr. Gundy, his opinion was exculpatory to the charged offense because Petitioner was suffering a state of insanity and whether he was temporarily or partially deprived of reason. A "constitutional claim that implicates 'fundamental fairness'.... Compels review regardless of procedural defaults." *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Petitioner was suffering from a state of insanity when he committed the alleged offenses rendering him not criminally responsible for his actions. Oklahoma follows the *M'Naghten[1]* test of legal insanity. See 21 O.S. § 152 et seq; *Garrett v. State*, 1978 OK CR 126, 586 P.2d 754. The terms of 21 O.S. § 152 (4) provides: "All persons can commit crimes, except those belonging to these classes.........(4) (Lunatics, *insane persons*, and *all persons of unsound mind*, including persons *temporarily* or *partially deprived of reason*, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness."

"A defendant was legally insane if during the commission of the crime he was suffering from a mental *disease or defect* rendering him unable to differentiate between right and wrong." *Pugh v. State*, 1989 OK CR 70, 781 P.2d 843, 844. Petitioner was suffering from a mental defect and Appellate Counsel's failure to raise Trial Counsel's ineffectiveness resulted in undue prejudice where the fundamental principles of due process were violated. Under the *M'Naghten* test, a defendant is insane if suffering from a mental disease or defect "rendering him... *unable to understand* the *nature and consequences* of his acts." *Pugh, supra*, at 844; See also *Richardson v. State*, 1977 OK CR 298, 569 P.2d 1018, 1019. This language followed explicitly the rule set forth in *M'Naghten* which is the only test used to determine criminal responsibility in Oklahoma. *Walker v. State*, 1986 OK CR 116, 723 P.2d 273, 282, *cert. denied*, 479 U.S. 995, 107 S.Ct. 599,

---

[1] *M'Naghten's* Case, 8 Eng. Rep. 718 (1843)

93 L.Ed.2d 600 (1986); *Jones v. State, supra.* The Petitioner was not criminally responsible for his actions as he could not understand the nature and consequences of his actions.

This Petitioner suffers from a mental defect that requires treatment. The Petitioner argues there is more than a strong presumption he was temporarily insane or deprived of reason when he committed the alleged offenses by the language of 21 O.S. § 152 (4), thus, the Court was without jurisdiction as Petitioner was exempt from prosecution under 21 O.S. § 152 (4).

     **c.**     **Petitioner has a Sixth Amendment right to the effective assistance of Appellate Counsel and Trial Counsel where that right extends to plea negotiations.**

Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. *Lafler v. Cooper, supra; Missouri v. Frye*, 132 S.Ct. at, 1386-1387, see also *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). During plea negotiations defendants are "entitled to the effective assistance of competent counsel." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In *Hill,* the Court held "the two-part *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill,* 474 U.S., at 58. The performance prong of *Strickland* requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Id.* at 57 (quoting *Strickland*, 466 U.S. at 688).

Petitioner could not comprehend the consequences of rejecting or accepting a plea and a defendant is entitled to "a full understanding of what the plea connotes and of its consequences." *Couch v. State*, 1991 OK CR 67, ¶ 4, 814 P.2d 1045, 1046, quoting *Boykin v. Alabama*, 395 U.S. 238, 243-244, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). Whether a plea is intelligent depends on the competency of counsel's advice. *McMann, supra.* Another issue as it was discussed above is whether Petitioner had the reasoning faculties to accept or reject a plea and there are not

proceedings that would reliably establish that the District Court inquired into Petitioner's competence to ensure whether or not rejecting a plea was voluntary.

PROPOSITION II

**APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO CHALLENGE THE DISTRICT COURT'S SUBJECT MATTER JURISDICTION BECAUSE OKLAHOMA CONSTITUTION ARTICLE 1 § 3 PROVIDED EXCLUSIVE JURISDICTION TO THE UNITED STATES.**

STANDARD OF REVIEW

This case presents a matter of first impression however there is support from the United States Supreme Court that supports the Petitioner's claims this Court lacked subject matter jurisdiction. Cf *McGirt v. Oklahoma,* 591 U.S. ____, 140 S.Ct. 2452, 207 L.Ed.2d 985 (2020); *Murphy v. Royal*, 875 F. 3d 896, 907–909, 966 (2017), cert. granted 589 U. S. ___ (2019); See *Sharp v. Murphy*, 591 U.S. ____ (2020) (Per Curiam).

ARGUMENT AND AUTHORITY

Tulsa County is Indian Country according to 18 U.S.C. § 1151 thus establishing this is the territorial jurisdiction of the United States and Federal statutes "apply only within the territorial jurisdiction of the United States." *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949). "There are three methods by which the United States obtains exclusive or concurrent jurisdiction over federal lands in a state: (1) a state statute consenting to the purchase of land by the United States for the purposes enumerated in Article 1, Section 8, Clause 17, of the Constitution of the United States; (2) a state cession statute; and **(3) a reservation of federal jurisdiction upon the admission of a state into the Union**. See *Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938). Therefore, the State lacked subject matter jurisdiction over the offense because exclusive jurisdiction was ceded to the United States under Okla. Const., art. 1, § 3. Wherever the United States has such jurisdiction the State would have no authority to even impose a tax. *Surplus Trading Co. v. Cook*, 281 U.S. 647, 650, 50 S.Ct. 455, 74 L.Ed. 1091 (1930) ("It is not unusual for the United States to own within a State lands which are

14

set apart and used for public purposes. Such ownership and use without more do not withdraw the

lands from the jurisdiction of the State.......") *Id.* The Enabling Act withdraws the land from the

State or a state cession of jurisdiction. Oklahoma differs greatly from many states.

Important to the claims raised begins with an analysis which must look at [59[th] Congress,

Session I, Chapter. 3335, pg. 279, (1906)] of the Enabling Act which provides in part:

> **Second.** That the people inhabiting said proposed State do agree and declare that they forever disclaim all right and title to the unappropriated lands and ungranted public lands lying within the boundaries thereof and to all lands lying within said limits owned or held by any Indian or Indian tribes, except as hereinafter provided, and that until the title thereto shall have been extinguished by the United States the same shall be and remain subject to the disposition of the United States, and such Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States; that the lands and other Equality of tax a property belonging to citizens of the United States residing without the said State shall never be taxed at a higher rate than the lands and......

This is embodied into the Oklahoma Constitution and cedes jurisdiction to the United

States where Oklahoma Constitution Article 1 § 3 cannot be mistaken as the Enabling Act[2] and

must be interpreted by a plain reading of the text to arrive at a meaning of what the framers

intended. The provision provides:

> The people inhabiting the State do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within **said limits owned or held by any Indian, tribe, or nation**; and that until the title to any such public land shall have been extinguished by the United States, <u>the same shall be and remain subject to the jurisdiction, disposal, and control of the United States.</u> Land belonging to citizens of the United States residing without the limits of the State shall never be taxed at a higher rate than the land belonging to residents thereof. No taxes shall be imposed by the State on lands or property belonging to or which may hereafter be purchased by the United States or reserved for its use.

Because Oklahoma forever disclaimed all right and title in the limits owned or held by any

Indian, Tribe, or Nation; and that until the title to any such public land shall have been extinguished

by the United States, the same shall be and remain subject to the jurisdiction, disposal, and control

---

[2] *In re Initiative Petition No. 363*, 1996 OK 122, 927 P.2d 558.

of the United States. Oklahoma specifically gave the jurisdiction to the United States regardless of

the MCA or GCA when it entered the Union and cannot claim it had jurisdiction. Article Four of

the United States Constitution provides that Congress has the power to enact laws respecting the

**Territory** or other Property belonging to the United States.

The Oklahoma Supreme Court addressed an issue involving a Tribe in *Hoover v. Kiowa*

*Tribe of Oklahoma*, 1998 OK 23, 957 P.2d 81. The issue in *Hoover* violated a contractual

agreement between a tribe and a non-Indian. However, KAUGER, Chief Justice, dissenting, with

whom SUMMERS, Vice Chief Justice, joined reasoning their opinion that:

> "¶ 9 Despite the language of Oklahoma's enabling legislation, specifically
> protecting the rights of Native Americans in Indian Territory, section 6 of P.L. 280,
> 67 Stat. 590 (1953) provides:
>
>> Notwithstanding the provisions of any Enabling Act for the
>> admission of a State, the consent of the United States is hereby given
>> to the people of any State to amend, where necessary, their State
>> constitution or existing statutes, as the case may be, to remove any
>> legal impediment to the assumption of civil and criminal jurisdiction
>> in accordance with the provisions of this Act: Provided, That the
>> provisions of this Act shall not become effective with respect to such
>> assumption of jurisdiction by any such State until the people thereof
>> have appropriately amended their State constitution or statutes as the
>> case may be.
>
> Oklahoma has not amended its Constitution, nor has it complied with the conditions
> set forth in P.L. 280 to invoke jurisdiction over Indian tribes. It also has not assumed
> economic responsibility for tribal services currently provided by Indian nations,
> i.e., health care, indigent relief, road improvements, etc. The majority's reliance on
> a statement by Governor Johnston Murray, who served from 1951 to 1955, for the
> proposition that adoption of P.L. 280 in Oklahoma would make no difference to
> Native Americans in Oklahoma is unconvincing. Had the state passed legislation
> or amended its constitution in conjunction with the federal statute — **which it has
> not, civil and criminal jurisdiction could have been extended over Indian
> country**. However, the window has closed on Oklahoma's opportunity to assume
> jurisdiction under P.L. 280 as originally enacted. The portion of the federal statute
> allowing for the assumption of jurisdiction was repealed in 1968."

Subject-matter jurisdiction "refers to a tribunal's power to hear a case" and "can never be

forfeited or waived." *Union Pacific R. Co. v. Locomotive Engineers*, 558 U.S. 67, 81, 130 S.Ct.

584, 175 L.Ed.2d 428 (2009) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), in turn quoting *U.S. v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)); See also *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). "Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject-matter, the Court shall dismiss the action." *Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). Subject-matter jurisdiction can never be waived or forfeited. *Gonzalez v. Thaler*, 565 U.S. 134, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012). See also *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (whether subject-matter jurisdiction exists and may raise the issue at any stage in the litigation).

The State of Oklahoma cannot prevail on any defenses of laches, acquiescence, equitable estoppel, estoppel or otherwise because any argument that a claim was previously available demonstrates bad faith from the government where there is an intentional infringement then turning to the doctrine of "unclean hands." The general rule of law is that an act done in violation of a statutory prohibition is void and confers no right upon the wrongdoer, but this rule is subject to the qualification that when, upon a survey of the statute, its subject-matter and the mischief sought to be prevented, the legislature intended otherwise, effect must be given to that intention. See *Waskey v. Hammer*, 223 U.S. 85, 94, 56 L.Ed. 359, 32 S.Ct. 187 (1912); *Miller v. Ammon*, 145 U.S. 421, 426, 12 S.Ct. 884, 36 L.Ed. 759 (1892); *Burck v. Taylor*, 152 U.S. 634, 649 14 S.Ct. 696, 38 L.Ed. 578 (1894); *Connolly v. Union Sewer Pipe Co.*, 184 U.S. 540, 548, 22 S.Ct. 431, 46 L.Ed. 679 (1902). See also *Ewert v. Bluejacket*, 259 U.S. 129, 138, 42 S.Ct. 442, 66 L.Ed. 858 (1922)).

Any ruling that laches would apply to bar a claim would violate the separation of powers doctrine because the treaty rights are the exclusive province of Congress. Cf *McGirt, supra*. Laches or estoppel is not available to defeat Indian treaty rights or statutes that specifically confer no right

17

on the wrongdoer. "[T]he equitable doctrine of laches ... cannot properly have application to give vitality to a void deed and to bar the rights of Indian wards in lands subject to statutory restrictions." *Ewert v. Bluejacket, supra*, (citing *Northern Pac. Ry. Co. v. Boyd*, 228 U.S. 482, 500, 33 S.Ct. 554, 57 L.Ed. 931 (1913); *Halstead v. Grinnan*, 152 U.S. 412, 417, 14 S.Ct. 641, 38 L.Ed. 495 (1894); *Galliher v. Cadwell*, 145 U.S. 368, 372 12 S.Ct. 873, 36 L.Ed. 738 (1892).

This is true even where the Indians have long acquiesced in use by others of affected lands or have purported to grant away their occupancy and use rights without Federal authorization. *Swim v. Bergland*, 696 F.2d 712, 718 (9th Cir. 1983). *Board of Commissioners v. U.S.*, 308 U.S. 343, 351, 60 S.Ct. 285, 288, 84 L.Ed. 313 (1939); *U.S. v. Ahtanum Irrigation District*, 236 F.2d 321, 334 (9th Cir.1956), *cert. denied*, 352 U.S. 988, 77 S.Ct. 386, 1 L.Ed.2d 367 (1957); *U.S. v. Southern Pacific Transportation Co.*, 543 F.2d 676, 699 (9th Cir.1976). "It is beyond the power of the State, either through statutes of limitation or adverse possession, to affect the interest of the United States; and the United States manifestly has an interest in preserving the property of these wards of the government for their use and benefit." *U.S. v. 7,405.3 Acres of Land*, 97 F.2d 417, 423 (4th Cir. 1938) The Court in *Canadian St. Regis Band of Mohawk Indians v. New York*, 278 F. Supp. 2d 313, 330-33 (N.D.N.Y. 2003) chastised the State defendants for continuing to argue laches against the tribe's claims because "[ll]aches has no place in Indian land claim actions." In a Connecticut case *Schaghticoke Tribe of Indians v. Kent Sch. Corp.*, 423 F. Supp. 780, 784-85 (D. Conn. 1976) the Court determined "The cases make plain that limitations, adverse possession, laches and estoppel cannot bar recovery of Indian lands in a suit brought to recover protected territory.... [T]he inapplicability of these affirmative defenses extends to suits by individual Indians and is not solely a product of the sovereign immunity of the United States. The determination is rooted in the language and purpose of federal protective statutes like the Nonintercourse [sic] Act." Further because the MCA and GCA are congressional mandates, the State nor the judiciary can

intrude because they are in the exclusive jurisdiction of the United States thus depriving the State of subject-matter jurisdiction. The law does not allow for a Court to assume "arbitrary jurisdiction" over subject-matter not properly in a Court of competent jurisdiction.

### REQUEST FOR AN EVIDENTIARY HEARING

The Petitioner request that the Court hold an Evidentiary Hearing where he has a raised a material fact issue about the actions of counsel and thus would require a hearing under 22 O.S. § 1084.

### CONCLUSION

This Court has jurisdiction under 22 O.S. § 1085 to GRANT a New Trial where the resulting prejudice will be a miscarriage of justice. IT IS SO PRAYED.

Respectfully submitted,

DEBRA K. HAMPTON, OBA # 13621
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
(405) 250-0966
(866) 251-4898 (fax)
hamptonlaw@cox.net
Attorney for Defendant/Petitioner

### CERTIFICATE OF SERVICE

This is to certify that on January 28, 2021, the original and copies were hand-delivered for filing to the Tulsa County Court Clerk's Office with a request that the Clerk place a file-stamped copy in the **Notice Receptacle of the assigned Judge and the DA's office**.

DEBRA K. HAMPTON

19